# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| XOME SETTLEMENT SERVICES, LLC | § | |
| and QUANTARIUM, LLC | § | |
| | § | |
| v. | § | Civil Action No. 4:18-CV-00837 |
| | § | Judge Mazzant |
| CERTAIN UNDERWRITERS AT | § | |
| LLOYD'S, LONDON SUBSCRIBING TO | § | |
| POLICY NO. B0621PXOME000116 | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Plaintiffs Xome Settlement Services, LLC and Quantarium LLC's (collectively, "Plaintiffs") second Motion to Remand Based on Lack of Subject Matter Jurisdiction (Dkt. #44). Having considered the motion and the relevant pleadings, the Court finds that the motion should be granted.

### BACKGROUND

**I.  Policy Number B0621PXOME000116**

Plaintiffs are insureds under Miller Professional Liability Policy No. B0621PXOME000116 ("Policy") (Dkt. #2 ¶ 10). Defendants are Certain Underwriters at Lloyd's, London Subscribing to the Policy ("Defendants"). The Policy provides professional-liability coverage to Plaintiffs (Dkt. #2 ¶ 19). There is a $5 million limitation of liability per claim (Dkt. #2 ¶ 19).

Plaintiffs are insured at Lloyd's of London, and there are three Lloyd's Syndicates subscribed to the Policy (Dkt. #2 ¶ 18). All three Syndicates are responsible for a 33.34% share of the Policy's coverage (Dkt. #2 ¶ 18).

One of these three Syndicates is made up of nearly 1,400 members, or "Names" (Dkt. #45; Dkt. #51 at p. 5). Every one of these 1,400 individual Names is responsible for the same share of

liability under the Policy (Dkt. #51 at p. 5). So, each Name in this Syndicate is responsible for approximately 0.0238% of the total, $5 million Policy limit—or about $1,200 (Dkt. #51 at p. 5). And the Names' liability is several under the Policy's terms (Dkt. #5, Exhibit 1 at p. 38; Dkt. #51 at p. 4).

## II. Factual Background

From approximately 2012 to 2017, Plaintiff Xome and its parent company, Nationstar, received data-analysis services in connection with their mortgage appraisal management business from Collateral Analytics (Dkt. #2 ¶ 10). During that time, Plaintiff Xome acquired Plaintiff Quantarium (Dkt. #2 ¶ 11). Soon, Nationstar requested that Plaintiff Quantarium revise its existing, automated-valuation model so that Nationstar could begin redirecting work from Collateral Analytics to Plaintiff Quantarium (Dkt. #2 ¶ 12). Collateral Analytics became suspicious, claiming that Plaintiffs and Nationstar were giving Collateral Analytics' proprietary valuation tools—accessed while Collateral Analytics was working to serve Plaintiff Xome and Nationstar as customers—to Plaintiff Quantarium so that it could replicate Collateral Analytics' products (Dkt. #2 ¶ 13; Dkt. #23, Exhibit 1 at p. 3).

In April and May of 2017, Collateral Analytics invoked alternative dispute resolution proceedings against Plaintiffs under the parties' Master Services Agreement (Dkt. #30 at p. 8). Plaintiffs notified Defendants of this claim within the coverage period of the Policy (Dkt. #30 at p. 8). After ADR proved unsuccessful, Collateral Analytics filed suit against Plaintiffs and Nationstar on January 2, 2018, asserting eleven causes of action (the "Lawsuit") (Dkt. #30 at p. 8).

In its complaint, Collateral Analytics alleges that Plaintiffs and Nationstar:

- Planned to "take Collateral Analytics' technology, confidential information, and trade secrets, and give them to a subsidiary they acquired for that purpose [Plaintiff Quantarium]" (Dkt. #23, Exhibit 1 at p. 3).

- "[W]ere were secretly plotting to use what they learned from Collateral Analytics to copy Collateral Analytics' industry-leading tools . . ." (Dkt. #23, Exhibit 1 at p. 13).

- "[I]ntended to deceive Collateral Analytics and cover up the fact that Nationstar and Xome were conspiring to steal Collateral Analytics' technology" (Dkt. #23, Exhibit 1 at p. 15).

- Created a spreadsheet timetabling their "scheme to misappropriate Collateral Analytics' entire suite of products . . ." (Dkt. #23, Exhibit 1 at p. 16).

- Plaintiff Quantarium now uses the products it "stole from Collateral Analytics . . . to compete directly with Collateral Analytics in the marketplace" (Dkt. #23, Exhibit 1 at p. 24).

- Acted "not accidental[ly] or inadvertent[ly]," but "willful[ly]," "malicious[ly]," and "knowingly and with intent to defraud" Collateral Analytics (Dkt. #23, Exhibit 1 at pp. 28–37).[1]

On January 2, 2018, Defendants advised Plaintiffs that they were disclaiming coverage under the Policy and had no duty to defend Plaintiffs in connection with the Lawsuit (Dkt. #30 at p. 9).

## III. Procedural History

Plaintiffs filed this insurance-coverage action in the 367th Judicial District Court of Denton County, Texas seeking breach-of-contract damages and a declaration of their rights under the Policy (Dkt. #1; Dkt. #2 at p. 1). On November 29, 2018, Defendants removed the case to this Court (Dkt. #1).

On December 20, 2018, Plaintiffs filed their first Motion to Remand to State Court (Dkt. #5). The basis of Plaintiffs' motion was that the Policy foreclosed Defendants from removing this case to federal court (Dkt. #16). The Court denied Plaintiffs' first Motion to Remand to State Court (Dkt. #16).

---

[1] Collateral Analytics made similar statements regarding Plaintiffs' motives on at least thirty separate occasions.

On October 7, 2019, Plaintiffs filed their second Motion to Remand Based on Lack of Subject Matter Jurisdiction (Dkt. #44). In Plaintiffs' second motion to remand, they argued that Defendants did not properly establish complete diversity (Dkt. #44). On October 21, 2019, Defendants responded (Dkt. #49). Plaintiffs replied on October 28, 2019 (Dkt. #51). In their reply, Plaintiffs raised the new argument that remand was appropriate since Defendants could not meet the amount-in-controversy requirement (Dkt. #51). Defendants filed their sur-reply on November 4, 2019 (Dkt. #52), and Plaintiffs filed their sur-sur-reply on November 8, 2019 (Dkt. #57).

## LEGAL STANDARD

"Federal courts are courts of limited jurisdiction, possessing only that power authorized by Constitution and statute." *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). "Only state court actions that originally could have been filed in federal court may be removed to federal court by the defendant." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987) (citing 28 U.S.C. § 1441(a)).

"In an action that has been removed to federal court, a district court is required to remand the case to state court if, at any time before final judgment, it determines that it lacks subject matter jurisdiction." *Humphrey v. Tex. Gas Serv.*, No. 1:14-CV-485, 2014 WL 12687831, at *2 (E.D. Tex. Dec. 11, 2014) (citations omitted). The Court "must presume that a suit lies outside [its] limited jurisdiction," *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001), and "[a]ny ambiguities are construed against removal and in favor of remand to state court." *Mumfrey v. CVS Pharmacy, Inc.*, 719 F.3d 392, 397 (5th Cir. 2013) (citing *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002)). "When considering a motion to remand, the removing

party bears the burden of showing that federal jurisdiction exists and that removal was proper." *Humphrey*, 2014 WL 12687831, at *2 (quoting *Manguno*, 276 F.3d at 723).

## ANALYSIS

I. **The Court Lacks Subject-Matter Jurisdiction, Necessitating Remand**

Lawsuits involving Lloyd's of London are unique. As the Fifth Circuit explained in *Corfield v. Dall. Glen Hills LP*, 355 F.3d 853 (5th Cir. 2003): "Lloyds of London is not an insurance company. . . . Thus, a policyholder insures *at* Lloyd's but not *with* Lloyd's." 355 F.3d at 857–58. Usually, a Lloyd's policy has several "Syndicates," which are collectively responsible for 100% of the policy's coverage. *Id.* at 858. But these "Syndicates" are "creature[s] of administrative convenience"—Syndicates have no independent legal identity, and they bear no liability for the risk on a Lloyd's policy. *Id.*

The members who belong to these Syndicates—and bear the liability for the risk—are called "Names." *Id.* The Names "finance the insurance market and ultimately insure risks." *Id.* These Names may be individuals, corporations, or unincorporated entities. *See id.* Typically, "hundreds of Names will subscribe to a single policy, and the liability among the Names is several, not joint." *Id.* The Names are contractually committed to the insured; a Syndicate, which is simply a group of Names, does not have a contractual relationship with the insured. *Id.* at 859. But, "[t]he insured does not have to sue each Name individually [] to collect on their individual promises." *Id.* So, when there is litigation involving a Lloyd's policy, the lead underwriter on the policy typically appears as a representative on behalf of all Names. *Id.*

Having untangled the mechanics of a lawsuit involving Lloyd's, the Court finds that remand for lack of subject-matter jurisdiction is required for failure to meet the amount in controversy. By filing suit against "Certain Underwriters at Lloyd's, London Subscribing to Policy No. B0621PXOME000116," Plaintiffs sued all Names subscribing to and severally liable under

5

the Policy. This means that each individual Name subscribing to the Policy must meet the jurisdictional amount. Yet Defendants have not shown that the amount in controversy exceeds $75,000 for each individual Name.

### A. The Jurisdictional Amount Must Be Met as to Each "Name"

The threshold question here is dispositive: are the actual parties to this controversy the Syndicates, or the Names? If it the former, the jurisdictional amount is undoubtedly met. If it is the latter, there is no dispute that the jurisdictional amount is unmet. The Court finds that the Names subscribing to the Policy are the real parties in interest; accordingly, the amount-in-controversy requirement must be met for each individual Name underwriting the Policy.

Plaintiffs argue that the amount in controversy must be met as to each Name; and because each Name is severally liable under the Policy, the liability of the Names cannot be aggregated to meet the jurisdictional requirement (Dkt. #51 at pp. 4–5). So, under that premise, Plaintiffs' calculations are as follows: the total limits of liability under the Policy is $5 million; each Syndicate is responsible for a 33.34% share of this liability; one of the Syndicates here has approximately 1,400 severally liable Names; thus, the liability of each of these members is capped at less than $1,200 (Dkt. #51 at p. 5).

Defendants do not argue with the accuracy of Plaintiffs' calculations, and agree that the Policy has a $5 million limit of liability (Dkt. #52 at p. 4). Instead, Defendants claim that by raising this argument for the first time their reply brief, Plaintiffs waived it (Dkt. #52 at p. 1). In the alternative, Defendants assert that the jurisdictional amount is met as to each Syndicate (Dkt. #52 at p. 2). Defendants state that because Plaintiffs' Original Petition only names the Syndicates as defendants, it is the Syndicates—not the Names—that must meet the jurisdictional amount (Dkt. #52 at pp. 2–3). Defendants support this argument by pointing to the fact that both parties refer to the Syndicates as "unincorporated association[s]," that Syndicates have the

"capacity to sue or be sued as provided under Federal Rule of Civil Procedure 17(b)," and if Plaintiffs had intended the Names to be the real parties in interest, they should have made it clear in their Original Petition (Dkt. #52 at pp. 3–4). The Court is unpersuaded by Defendants' arguments.

Defendants' primary argument—that Plaintiffs waived their challenge to the jurisdictional minimum by raising it in a reply—is misguided. The Court typically disfavors new arguments being raised in a reply. And Plaintiffs should know better than to reserve a potentially dispositive argument for last-minute inclusion in a reply brief. But the question here is whether the Court lacks subject-matter jurisdiction to proceed with this case. A challenge to the Court's subject-matter jurisdiction is never waived and may be raised at any time. *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 501 (2006). Indeed, even if Plaintiffs had not raised their jurisdictional-amount argument in the reply, the Court would have an independent obligation to determine whether the jurisdictional amount was met. *See id.* And, "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447. Defendants' contention that Plaintiffs waived this argument is meritless.

Defendants' next argument—that because the Original Petition names the Syndicates as defendants, it is the Syndicates that must meet the jurisdictional amount as the real parties in interest—is equally unpersuasive. Plaintiffs filed their Original Petition "against Defendants *Certain Underwriters at Lloyd's, London Subscribing to Policy No. B0621PXOME000116*, including Lloyd's Syndicate[s] . . . ." (Dkt. #1, Exhibit 3) (emphasis added). Courts within the Fifth Circuit have held that filing suit against "Certain Underwriters at Lloyd's" is synonymous with suing every Name subscribing to the policy. *See Team One Properties LLC v. Certain Underwriters at Lloyds London*, 281 F. App'x 323 (5th Cir. 2008) (per curiam) (affirming the

district court's dismissal for lack of subject-matter jurisdiction in a suit against "Certain Underwriters at Lloyd's London" because the amount in controversy was not satisfied for each of the 4,435 Names subscribing to the policy); *Advanced Sleep Ctr., Inc. v. Certain Underwriters at Lloyd's London*, No. CIV.A. 14-592, 2015 WL 4097069, at *3 (E.D. La. July 7, 2015) ("Lloyd's contends that '[t]he only parties to this litigation are the Syndicates themselves.' . . . As this Court has already stated, the Names are the real parties to this action . . ."); *NL Indus., Inc. v. OneBeacon Am. Ins. Co.*, 435 F. Supp. 2d 558, 564 (N.D. Tex. 2006) ("In this case, NL sued Certain Underwriters at Lloyd's of London. As such, the suit is against each Name or Underwriter who is a subscriber to the policies in question."). This Court agrees: filing suit against "Certain Underwriters at Lloyd's" is synonymous with suing every Name subscribing to the policy since the Names *are* the underwriters. *Corfield*, 355 F.3d at 858–59.[2]

Defendants' argument also flouts the Fifth Circuit's definitive holding that "an insured has no claim against a Syndicate for coverage under a Lloyd's policy." *Id.* at 865. Even in situations where a Syndicate is comprised of only a single Name, the claim is always against the Name—never the Syndicate. *See id.* at 859 & n.5; *see also Advanced Sleep*, 2015 WL 4097069, at *3 & n.23 (collecting cases) (explaining that Names, not Syndicates, are the real parties in interest); *Cronin v. State Farm Lloyds*, No. CIV.A.H-08-1983, 2008 WL 4649653, at *5 & n.35 (S.D. Tex. Oct. 10, 2008) (same). It is axiomatic that "a federal court must disregard nominal or formal parties and rest jurisdiction only upon the . . . real parties to the controversy." *Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 461 (1980). A Syndicate cannot be a real party to a controversy involving

---

[2] Additionally, the Names subscribing to any given policy are highly confidential. (Dkt. #49 at p. 9 n.1) (citing *Corfield*, 355 F.3d at 859). Plaintiffs are not required to list out every Name underwriting the Policy—information Plaintiffs likely did not have before filing suit—in order to sue every Name. *See Corfield*, 355 F.3d at 859. This, along with the fact that the Syndicates are not entities that can be sued at all, see *Corfield*, 355 F.3d at 858–59, provides strong justification for treating a suit against "Certain Underwriters at Lloyd's, London" as a suit against the Names underwriting the policy.

"Certain Underwriters at Lloyd's London" under controlling Fifth Circuit precedent. *See Corfield*, 355 F.3d at 858–59, 864–65.[3]

With the above analysis completed, it becomes clear that each individual Name must satisfy the jurisdictional minimum before the Court can exercise subject-matter jurisdiction in this case. As the United States District Court for the Southern District of Texas explained:

> [T]he amount in controversy must be established for each individual Name subscribing to a Lloyd's of London policy when either (1) all the Names are party to the suit, or (2) when the Name or Names who are party to the suit are litigating in a representative capacity for the other Names. *See Team One Props.*, 281 F. App'x at 323 (affirming, in a suit against "Certain Underwriters at Lloyd's London," the district court's dismissal for lack of subject matter jurisdiction because the amount in controversy was not satisfied for each Name subscribing to the policy) . . . .

*Cronin*, 2008 WL 4649653, at *6. Plaintiffs sued every Name subscribing to the Policy. Defendants must accordingly show that the jurisdictional amount is met as to each individual Name. Defendants have not met their burden.

### B. Defendants Have Not Shown That the Jurisdictional Amount Is Met as to Each Name

Defendants have not met their burden of establishing that the jurisdictional amount is met as to each Name. In fact, Defendants seemingly do not contest the fact that the Court lacks subject-matter jurisdiction if each individual Name must satisfy the amount in controversy. *See generally* (Dkt. #52).

Plaintiffs and Defendants agree: The Policy's limit of liability is $5 million (Dkt. #51 at p. 5; Dkt. #52 at p. 4). Plaintiffs and Defendants also agree that the three Syndicates have an equal

---

[3] This is further supported by the fact that the Names are severally liable on a typical Lloyd's of London policy. (Dkt. #51 at p. 4); *see also Corfield*, 355 F.3d at 858 ("Typically hundreds of Names will subscribe to a single policy, and the liability among the Names is several, not joint.") (citation omitted). It is well established that severally liable parties may not aggregate amounts in controversy in order to satisfy the jurisdictional amount. *Cronin*, 2008 WL 4649653, at *5 (collecting cases). But by looking at the Syndicates—which are nothing more than aggregates of severally liable Names—to determine the amount in controversy, Defendants essentially ask the Court to ignore this well-settled law. The Court declines.

9

33.34% share of the liability under the Policy (Dkt. #51 at p. 5; Dkt. #52 at p. 4). Which means that within any one of the three Syndicates, the Names comprising that Syndicate are severally liable for an equal share of approximately $1,667,000.00 (Dkt. #51 at p. 5).

One of the Policy's Syndicates has approximately 1,400 Names; so, each of these 1,400 Names shares an equal portion of the $1,667,000.00 liability (Dkt. #51 at p. 5). In other words, each Name in this Syndicate is responsible for approximately 0.0238% of the total, $5 million Policy limit. At most, this means each Name's several liability is capped at around $1,200. This is nowhere near the jurisdictional amount. And because liability among the Names is several under the Policy,[4] it cannot be aggregated in order to satisfy the jurisdictional amount. *Cronin*, 2008 WL 4649653, at *5 (collecting cases).

Defendants do not dispute the veracity of these calculations. *See* (Dkt. #52 at pp. 4–6). It is the "party seeking to invoke federal diversity jurisdiction [that] bears the burden of establishing both that the parties are diverse and that the amount in controversy exceeds $75,000." *Garcia v. Koch Oil Co. of Tex. Inc.*, 351 F.3d 636, 638 (5th Cir. 2003) (citation omitted). Because Defendants have not met their burden regarding the amount in controversy, the Court must remand for lack of subject-matter jurisdiction.[5]

## CONCLUSION

It is therefore **ORDERED** that Plaintiffs' second Motion to Remand Based on Lack of Subject Matter Jurisdiction (Dkt. #44) is hereby **GRANTED**, and this case is **REMANDED** to the 367th District Court of Denton County, Texas.

---

[4] (Dkt. #51 at p. 4).

[5] The parties also dispute whether Defendants have established complete diversity. Because the Court has already determined it lacks subject-matter jurisdiction in this case, the Court does not address this alternative argument.

10

**SIGNED this 31st day of January, 2020.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE